# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                               )

SONYA OWENS,                )

                              )

                Plaintiff,     )

                              )

          v.             )          Civil Action No. 17-2110 (ABJ)

                              )

BANK OF AMERICA, *et al*.,    )

                              )

                Defendants.   )

_____ )

## MEMORANDUM OPINION

Sonya Owens ("plaintiff"), proceeding *pro se*, brings this action against Bank of America, N.A. ("BANA"), Samuel I. White, P.C. ("SIWPC") and Harvey West Auctioneers, Inc.[1]  It appears that each defendant played a role in the foreclosure of real property plaintiff owned in the District of Columbia.  BANA and SIWPC have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  When the Court considers a Rule 12(b)(6) motion, it must accept as true the well-pleaded factual allegations set forth in a complaint, and it must hold a complaint drafted by the plaintiff herself to a less stringent standard than one prepared by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  But even judged by that standard, plaintiff's complaint leaves much to be desired. It consists almost entirely of conclusory statements, and it is so lacking in factual allegations that the Court has found it necessary rely upon plaintiff's other submissions, including her oppositions

---

[1]  The Court will dismiss Harvey West Auctioneers, Inc. as a party defendant; the complaint contains no allegations at all concerning the company other than identifying it as a corporate defendant.

to defendants' motions, for context and to identify the particular legal claims plaintiff seeks to bring. *Cf. Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999). No matter how liberally the Court construes plaintiff's submissions in their entirety, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), she has not stated any viable claim.

Furthermore, the complaint appears to be an effort to re-litigate and essentially appeal a foreclosure that has been ruled upon by the Superior Court for the District of Columbia and the District of Columbia Court of Appeals, and plaintiff may not seek review of those determinations here. For the reasons discussed in more detail below, then, the Court will grant defendants' motions and dismiss the complaint in its entirety.

## BACKGROUND

Plaintiff describes herself as a "[m]ember of a protected group based on race, gender, and status[,]" Compl. ¶ 8, "[w]ith fee simple ownership rights," *id*. ¶ 9, "[i]n federal private property… known as 1325 Ingraham Street, N.W., Washington, DC 20011[.]" Compl. ¶¶ 10-11. According to plaintiff, her ownership rights were "[g]ranted by the U.S. federal government," *id*. ¶ 12, and she "is the only person listed on the deed or title with the U.S. federal government." *Id*. ¶ 13.[2]

It appears that plaintiff obtained a loan from Countrywide Home Loans, Inc. ("Countrywide") to refinance her then-existing mortgage. *See id*. ¶ 15; Pl.'s Opp'n to [SIWPC's] Mot. for Dismissal, ECF No. 20 ("Opp'n to SIWPC Mot.") at 7. Plaintiff alleges that she "timely[] exercised her right to cancel" the loan, Compl. ¶ 15 (emphasis removed), on or about December

---

[2]   Plaintiff's purported ownership of "federal private property" appears to be the basis for her argument that the Superior Court lacked jurisdiction over the foreclosure proceedings. *See, e.g.,* Compl. ¶¶ 13-14, 43; Emer. Mot. for Inj. Relief at 3-4. Plaintiff's argument lacks merit. Even if plaintiff were to demonstrate that diversity jurisdiction exists under 28 U.S.C. §§ 1331-1332, the Superior Court would not have been deprived of jurisdiction over foreclosure proceedings pertaining to real property in the District of Columbia. *See* D.C. Code § 42-816.

27, 2006, before disbursement of the loan proceeds. *Id.* ¶ 16; *see* Opp'n to SIWPC Mot., Exs. K1-K3. Plaintiff denies having assigned or transferred ownership in the property to Countrywide, Compl. ¶ 17, and denies the existence of "documents executed between [her] and the defendants" named in this lawsuit. *Id.* ¶ 21. Rather, plaintiff claims to have retained "[t]he deed, title, or ownership rights" to the property, *id.* ¶ 19, and to have "satisfied the original mortgage" in January 2007. *Id.* ¶ 18; *see* Opp'n to SIWPC Mot., Ex. L. She alleges that the original "Note was released into her possession," Compl. ¶ 18, and was filed with the Recorder of Deeds on February 1, 2007. Opp'n to SIWPC Mot. at 16.

BANA acquired Countrywide in August 2008. *See* Compl. ¶ 22; Opp'n to SIWPC Mot. at 18. On March 7, 2013, Jonnisha Brooks-Sims, a BANA Assistant Vice President, executed an Affidavit of Lost Note. Opp'n to SIWPC Mot., Exs. N1-N2 ("Brooks-Sims Aff."). According to Ms. Brooks-Sims, BANA was the servicer with respect to the following loan:

> Loan Number: [redacted]
> Borrower(s): SONYA L. OWENS
> Date of Note: 12/22/2006
> Original Principal Balance: $ 236,000.00
> Property Address: 1325 INGRAHAM ST NW, WASHINGTON, DC 20011-3603

Brooks-Sims Aff. ¶ 1. "Based on BANA's business records, BANA, or its predecessor (as servicer or by merger) or the custodian acquired possession of the Note on or before December 28, 2006." *Id.* ¶ 5 (emphasis removed). However, Ms. Brooks-Sims averred, "the Note ha[d] been lost," *id.* ¶ 4, and after having made "a good faith effort . . . to locate" it, *id.*, "possession of the note [could not] reasonably be obtained because the Note was destroyed, its whereabouts [could not] be determined, or it [was] in the wrongful possession of an unknown person." *Id.* ¶ 6. Further, she stated, "the loss of possession of the Note [was] not the result of a rightful transfer or a lawful seizure of the Note." *Id.* ¶ 7.

On August 23, 2013, an Assistant Vice President with Countrywide Home Loans, Inc. executed an Assignment of Deed of Trust for the purpose of assigning and transferring to BANA the "Deed of Trust from Sonya L. Owens to Countrywide Home Loans, Inc. dated December 22, 2006 recorded among the Land Records of District of Columbia, in Instrument # 2007010226 in the original principal amount of $236,000.00." Opp'n to SIWPC Mot., Ex. 01. This document was filed with the District of Columbia's Recorder of Deeds. *See id.*, Ex. 02.

According to plaintiff, the Deed of Trust "(#2007010226) filed in the D.C. Deeds Office is incomplete, unsigned, or cancelled." Opp'n to SIWPC Mot. at 6. She deems the document "fraudulent," *id.*; *see* Compl. ¶¶ 31-36, having been "filed several weeks after [she] canceled or voided it[.]" Opp'n to SIWPC Mot. at 6. She also asserts that this Deed of Trust "falsely names [SIWPC] as trustee." *Id.*; *see id.*, Ex. L. Yet, based on these falsified or "'missing' documents," Compl. ¶ 40, BANA initiated foreclosure proceedings in the Superior Court of the District of Columbia, *id.* ¶ 39, by filing a Complaint for Mortgage Foreclosure on July 30, 2014. *See* Samuel I. White P.C.'s Reply in Support of its Mot. to Dismiss, ECF No. 21 ("SIWPC Reply"), Ex. A (docket sheet) at 1; Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 9 ("Opp'n to BANA Mot.") at 1. At that time, plaintiff alleges, BANA "did not have possession of the Note and did not know of its whereabouts," Opp'n to SIWPC Mot. at 10, and therefore could not "prove it had the right to proceed with [the] foreclosure action" in the Superior Court. *Id.* at 17.

Nevertheless, pursuant to the Superior Court's December 17, 2015 Order and Decree for Sale of Real Property, *see* SIWPC Reply, Ex. A at 5, substitute trustees sold the property at auction on February 21, 2017. Emer. Mot. for Inj. Relief, ECF No. 15 at 5; *see id.*, Exs. B, G. The Superior Court issued an Order Granting Motion to Ratify Sale on May 30, 2017. SIWPC Reply, Ex. A at 8. Plaintiff sought relief in the District of Columbia Court of Appeals, which dismissed plaintiff's

appeal and motion for a stay of Superior Court's May 30, 2017 Order. *See* Order, *Owens v. Bank of America, N.A.*, No. 17-CV-638 (D.C. Ct. of App. Oct. 3, 2017). The Superior Court issued an Order Granting Plaintiff's Motion to Ratify Accounting, thus closing the foreclosure case, on May 25, 2018. SIWPC Reply, Ex. A at 10; Def. [BANA's] Response to Pl.'s Emer. Mot. for Inj. Relief, ECF No. 18, Ex. B. By then, BANA already had "recorded a trustee's deed transferring title to the proposed purchaser of [the property]." Opp'n to SIWPC Mot. at 29. Plaintiff filed a Notice of Appeal on June 12, 2018. SIWPC Reply, Ex. A at 10.

Plaintiff's complaint in this court, filed on October 11, 2017, sets forth five counts related to the foreclosure action. In Count One, entitled "Fraud," plaintiff states that "[t]he defendants are accused of robo-signing" documents, Compl. ¶ 31, and thus engaging in "[m]ortgage fraud," *id.* ¶ 32, by "creating . . . [f]alse documents . . . [s]tating Countrywide . . . had[] transferred or assigned a loan debt instrument" to BANA granting it "a secured interest in [Plaintiff's] federal private property." *Id.* ¶¶ 33-36. Further, plaintiff asserts that defendants have "[a]ttempted to unlawfully seize and [sell her] property at public auction," *id.* ¶ 41, without "any evidence to support their claims." *Id.* ¶ 44.

In Count Two, entitled "Predatory Lending," plaintiff accuses defendants of discrimination and disparate treatment, *id.* ¶¶ 46-47; "[u]nfair, deceptive, unlawful or fraudulent practices . . . during the loan origination process," *id.* ¶ 49; "imposing unfair and abusive loan terms…," *id.* ¶ 50; failure "to disclose the terms of a debt instrument assigned or transferred to them (whether or not true)," *id.* ¶ 51; violation of the Truth-in-Lending Act ("TILA"), *id.* ¶ 52; and "[m]isrepresentation." *Id.* ¶ 56.

In Count Three, entitled "Predatory Servicing," plaintiff alleges "[u]nfair, deceptive, unlawful, or fraudulent practices during the . . . mortgage servicing process," *id.* ¶ 58, and

"[w]rongful [c]onduct [r]elated to [f]oreclosures." *Id.* ¶ 59. She also alleges violations of "National Mortgage Settlement servicing standards," *id.* ¶ 60, the Fair Debt Collection Practices Act ("FDCPA"), *id.* ¶ 62, and unspecified consumer protection and financial privacy laws, *id.* ¶¶ 62-63. Count Three also includes defamation, *id.* ¶¶ 64-65, and intentional infliction of emotional distress, *id.* ¶ 66, in its list of alleged wrongs.

Counts Four and Five, entitled "Violation of Federal Court Order and Settlement Agreement" and "Conspiracy," respectively, set forth no additional factual allegations and simply "re-plead and re-allege" the preceding paragraphs in the complaint. The Court presumes that Count Four harkens back to Count Three and its allegation of a violation of "National Mortgage Settlement servicing standards." *Id.* ¶ 60. Further, the Court presumes that Count Five pertains to the fraud claims set out in Counts One and Two.

Plaintiff initially demanded monetary damages, litigation costs, and injunctive relief ordering defendants to stop mortgage servicing activity and to expunge "all negative information . . . reported to Equifax, TransUnion, and Experian[.]" *Id.* ¶ 70. Subsequently, among other relief, she demanded an injunction "prohibiting the possession, transfer of title, or foreclosure sale" of the property, and a declaration "[a]ll documents executed or filed by the Defendants[] pursuant to the sale or ratification of sale of [her] home on February 21, 2017 are [void]." Opp'n to SIWPC Mot. (proposed order).

## LEGAL STANDARD

A plaintiff need only provide a "short and plain statement of [her] claim showing that [she] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). To survive a motion to

dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks and citation omitted); *see Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). While the Court must accept as true the facts alleged in the complaint, it "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276. The Court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim either. *Id*.

Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94 (internal quotation marks and citation omitted), it still "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of [defendant's] misconduct,'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79); *see, e.g., Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) ("However, even though a pro se complaint must be construed liberally, the complaint must still 'present a claim on which the Court can grant relief.'"), *aff'd*, No. 13-5121, 2013 WL 6222951 (D.C. Cir. Nov. 19, 2013).

**ANALYSIS**

## I. The Legal Sufficiency of Plaintiff's Claims

The title plaintiff assigns to each count of her complaint does not reflect fully the legal claims she appears to raise therein. For this reason, the Court organizes its discussion by claims, not by count.

### A. Fraud, Misrepresentation, and Conspiracy

Under District of Columbia law, "[t]he essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977) (citations omitted), *cert. denied*, 434 U.S. 1034 (1978). A complaint alleging fraud is subject to a heightened pleading standard. Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In other words, the complaint must allege facts as to "the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," and the identity of the individuals involved. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 398 F.3d 1251, 1256 (D.C. Cir. 2004) (citations omitted). A plaintiff may prevail on a fraud claim only if she also "ha[s] suffered some injury as a consequence of [her] reliance on the misrepresentation." *Chedick v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998) (citing *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C. 1983)). "The purpose of Rule 9(b), like the general pleading standard, is simply to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process." *CUMIS Ins. Soc.,*

*Inc. v. Clark*, __ F. Supp. 3d __, __, 2018 WL 3474417, at *5 (D.D.C. July 19, 2018) (internal quotation marks and citations omitted).

BANA argues that the complaint does not, and cannot, state a viable fraud claim. *See* Bank of America, N.A.'s Mot. to Dismiss, ECF No. 5 ("BANA Mot.") at 7. In its view, the complaint "makes only conclusory statements that are bereft of any facts showing the 'who, what, when, where, and how' details required to satisfy Rule 9(b)." *Id.* Similarly, SIWPC argues that the complaint "fails to plead the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," leaving only "mere conclusory statements" which fail to address the elements of a fraud claim. Samuel I. White P.C.'s Mem. in Support of the Mot. to Dismiss, ECF No. 13-1 ("SIWPC Mem.") at 4. The Court concurs.

The complaint is entirely conclusory, and it repeats the word "fraud" without the necessary particularity. *See e.g.,* Compl. at 1, and ¶ 32. It is unclear whether plaintiff believes she was deceived by Countrywide when it originated the loan or by BANA when it assumed the loan, and this failure "to specify which defendant or defendants committed each allegedly fraudulent act … does not conform to the standard set forth in Rule 9(b) because it fails to give sufficient notice to the defendants as to what their role was in the alleged fraud." *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 206 (D.D.C. 2009). Further, the complaint does not identify the material fact misrepresented by defendants, allege that defendants misrepresented that fact with knowledge of its falsity and with an intent to deceive her, or indicate the date on which and circumstances under which the misrepresentation occurred. Furthermore, plaintiff does not identify which defendant is the lender or mortgagee, or otherwise would have been in a position to engage in "[m]ortgage fraud" as asserted in the complaint. Compl. ¶ 32. Even if defendants "robo-signed" documents,

*id*. ¶ 31, filed them in the Superior Court, and falsely claimed to have obtained a secured interest in her property, *see id*. ¶¶ 34-36, the complaint alleges no facts to demonstrate that any defendant knowingly made a false representation *to plaintiff* on which plaintiff relied to her detriment.[3]

The conspicuous absence of factual allegations to support a fraud claim warrants its dismissal. *See Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 31 (D.D.C. 2014) ("To the extent the plaintiff's fraud claim boils down to the contention that the defendant's execution and recordation of the Deed of Trust amounts to a false representation to the plaintiff, the plaintiff has nonetheless wholly failed to allege the critical element for a common law fraud claim of her reasonable reliance to her detriment on the defendant's conduct."); *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 171-72 (D.D.C. 2013) (dismissing fraud claim where plaintiff "does not provide facts to support the defendants' intent to deceive or the actions he took in reasonable reliance on the representations, some of which he does not even claim to have received); *Carter v. Bank of America, N.A.*, 888 F. Supp. 2d 1, 14 (D.D.C. 2012) (noting that fraud claim fails where plaintiff did not specify approximate dates on which fraudulent statements were made to her or specific nature of assurances).

The Court presumes that Count Five is an attempt to allege conspiracy to commit fraud. *See* Opp'n to BANA Mot. at 2 (alleging BANA committed fraud by "falsely claiming to have secured [a] mortgage interest in her property and then conspiring to act on it"). "[T]here is no independent action under District of Columbia law for civil conspiracy. *See Busby v. Capital One,*

---

[3] Plaintiff neither explains what "robosigning" means nor identifies in the complaint which document(s) defendants allegedly robosigned. At any rate, "robosigning" does not itself state a legal claim. *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (noting that "[n]umerous courts have held that bald allegations of 'robo-signing' do not suffice under the Rule 8(a)(2) standard set by *Iqbal*").

*N.A.*, 932 F. Supp. 2d 114, 140 (D.C.C. 2013), *appeal dismissed*, No. 13-7056, 2013 WL 3357830 (D.C. Cir. June 13, 2013). "[R]ather, it is a means for establishing vicarious liability for the underlying tort." *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000) (citing *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)); *Higgs v. Higgs*, 472 A.2d 875, 877 (D.C. 1984) (noting that "civil liability for fraud can be based upon participation in a conspiracy to defraud").

"The elements of civil conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Executive Sandwich Shoppe*, 749 A.2d at 738 (internal quotation marks and citations omitted); *see Halberstam*, 705 F.2d at 477. The complaint does not specify who conspired with whom to do what, and it invokes the concept of conspiracy in a wholly conclusory fashion. *See* Compl. at 1; *see id.* ¶ 68. Moreover, the inadequacies of the fraud claim leave the conspiracy claim without any foundation. *See Busby*, 932 F. Supp. at 140-41 ("Busby has failed to plead the circumstances constituting the underlying alleged fraud with particularity . . . , the Court would be hard-pressed to find that Busby has adequately pled a conspiracy to commit fraud"); *Carter*, 888 F. Supp. 2d at 26 ("Since the plaintiff has failed to state a claim for common law fraud . . . , her claim for conspiracy to commit fraud cannot stand alone and is thus also unavailing.").

## B. Discrimination, Disparate Treatment, Predatory Lending and the Truth in Lending Act

It appears that plaintiff's discrimination, disparate treatment, predatory lending and TILA claims, *see* Compl. ¶¶ 46-52, arise from the origination of the refinance loan. But the complaint is devoid of factual allegations to support the summary allegations of discrimination and disparate

treatment. Plaintiff deems herself a "[m]ember of a protected group based on race, gender, and status," Compl. ¶ 8, without providing more specifics, and she does not indicate when or how any alleged bias was exhibited in any transaction related to her loan. Plaintiff provides no detail that would reveal to the defendants or the Court what she means by "predatory lending," or what "[u]nfair, deceptive, unlawful, or fraudulent practices" were present during the loan origination process. Compl. ¶ 49. Nor does plaintiff identify a single one of the "unfair and abusive loan terms," *id*. ¶ 50, that were allegedly imposed on her.

Plaintiff is no more successful in stating a claim under TILA, *see* 15 U.S.C. § 1601 *et seq*., which generally requires "accurate and meaningful disclosure of material terms to consumers in credit transactions." *Solomon v. Falcone*, 791 F. Supp. 2d 184, 188 (D.D.C. 2011) (citing 15 U.S.C. § 1601). "Material terms" include "the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and [other] disclosures[.]" 15 U.S.C. § 1602(v). "To state a claim under TILA, a plaintiff must show either that she did not receive the required disclosures or that the disclosures provided were not clear and conspicuous." *Thompson v. HSBC Bank USA, N.A.*, 850 F. Supp. 2d 269, 276 (D.D.C. 2012) (internal quotation marks and citations omitted).

If, as plaintiff alleges, "[t]here are not any documents executed between [plaintiff] and the defendants," Compl. ¶ 21, it is not clear where, or in the context of what credit transaction, either defendant would have been required to make the disclosures TILA requires. The complaint does not identify which defendant is an entity to which TILA applies. Rather, it appears that BANA serviced a loan originated by Countrywide, but Countrywide is not a party in this case. Absent

factual allegations to show that any defendant would have been obligated to make disclosures under TILA, the TILA claim must be dismissed. *Cf. Carter v. Bank of America, N.A.*, 888 F. Supp. 2d 1, 23 (D.D.C. 2012) (finding that "predatory lending" allegations "revolv[ing] around the origination of the loan . . . cannot be sustained against Bank of America, which did not originate the loan").

## C. Predatory Servicing and the National Mortgage Settlement

Plaintiff's submissions are replete with references to a "National Mortgage Settlement," and a Consent Judgment, the terms of which defendants allegedly violated. *See, e.g.* Compl. at 1; *id*. ¶¶ 23-27, 60; Opp'n to BANA Mot. at 2 n.1, 3; Opp'n to SIWPC Mot. at 7-10, 13-14. The settlement and judgment to which plaintiff refers resulted from an action brought by the United States against BANA and other financial institutions (including Countrywide) concerning mortgage loan servicing standards. *See generally* Consent Judgment, *United States v. Bank of America Corp.*, No. 1:12-cv-0361 (D.D.C. Apr. 4, 2012). The Court will consider the ambiguous "predatory servicing" allegation together with the claim that defendants violated the National Mortgage Settlement because both claims appear to arise from BANA's alleged mishandling or misconduct in servicing the mortgage loan.[4] Both will be dismissed.

As BANA points out, *see* Bank of Am. N.A.'s Reply in Support of its Mot. to Dismiss, ECF No. 10 ("BANA Reply") at 3, plaintiff is not a party to the Settlement. For this reason, the Court concludes that plaintiff has no right to enforce any obligation the settlement or consent judgment imposes. *See Ananiev v. Freitas*, 587 F. App'x 661 (D.C. Cir. 2014) (per curiam) ("The

---

[4]   Plaintiff also alleges that BANA violated FHA/HUD foreclosure guidelines. *See* Opp'n to SIWPC Mot. at 11-13. Plaintiff does not allege that she obtained an FHA loan, and it is not clear that the FHA/HUD guidelines apply. Nor does it appear that BANA violated a bankruptcy stay, since there was no open bankruptcy proceeding at the time BANA initiated foreclosure proceedings. *See* Def. [BANA's] Response to Pl.'s Emer. Mot. for Inj. Relief, Exs. D-E.

district court properly concluded that appellant failed to state a claim for a violation of the National Mortgage Settlement Consent Judgment, as appellant was not a party to that judgment, and the judgment does not provide a private right of action for third parties."); *Segelstrom v. Citibank, N.A.*, 76 F. Supp. 3d 1, 18 (D.D.C. 2014) ("[B]y its terms, this Consent Judgment is not enforceable by individual third-party beneficiaries."), *aff'd*, 617 F. App'x 4 (D.C. Cir. 2015); *McCain v. Bank of America*, 13 F. Supp. 3d 45, 55 (D.D.C. 2014) ("The plaintiff was not a party to this consent judgment, and therefore, is unable to enforce any obligation imposed upon the parties to the judgment."), *aff'd*, 602 F. App'x 836 (D.C. Cir. 2015).

### D. Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692 *et seq*., "imposes civil liability on debt collectors for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010) (brackets and internal quotation marks omitted). "A debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. For example, a debt collector may not employ or threaten violence, 15 U.S.C. § 1692d(1), or "[c]aus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

Plaintiff's FDCPA claim is merely a conclusory statement that defendants violated the statute. Compl. ¶ 61. The complaint does not identify which defendant is the alleged "debt collector" to which the FDCPA applies, *see* 15 U.S.C. § 1692a(6), nor does it identify the FDCPA provision either defendant violated, nor describe any unlawful collection practices in which a

defendant engaged.[5]  Therefore, the FDCPA claim cannot withstand the Rule 12(b)(6) motion.  *See Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 159 (D.D.C. 2015).

**E. "Consumer Protection" and "Financial Privacy" Law Violations**

Plaintiff's allegations about "Consumer Protection laws," Compl. ¶ 62, and "financial privacy laws," *id.* ¶ 63, are equally unavailing.  The complaint is devoid of any factual allegations adequate to put defendants on notice of these claims.  Plaintiff neither identifies which defendant is responsible nor cites a particular statute or law violated by any defendant.  These mere labels do not state a viable legal claim.

If one were to assume that plaintiff's reference to "Consumer Protection laws" was meant to invoke the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), *see* D.C. Code § 28-3901 *et seq.*, the claim fails.  Generally, the DCCPPA "police[s] trade practices arising only out of consumer-merchant relationships."  *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981).  Plaintiff expressly denies the existence of "any documents executed between [her] and the defendants," Compl. ¶ 21, and insofar as the DCCPPA pertains to consumer goods or services, it may not even apply in the context of this case.  *See Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 279 (D.D.C. 2011).  Even if the DCCPPA were to apply, *see Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 51 (D.D.C. 2010) (noting that mortgagees' practices are subject to the DCCPPA), plaintiff's complaint fails to allege how any defendant violated the statute.  If, for example, plaintiff intends to allege "misrepresent[ation] as to a material fact which has a tendency to mislead," D.C. Code § 28-3904(e), as with the fraud claim, the complaint fails to allege a material misrepresentation or to "establish that she has suffered damage as a result of the unlawful

---

[5]  In other submissions, *see, e.g.,* Pl.'s Rebuttal and Cross-Mot. for Default or Summ. J., ECF No. 23 at 15, plaintiff identifies SIWPC as the debt collector for purposes of the FDCPA.  Still, plaintiff fails to allege any facts describing how SIWPC violated any provision of the FDCPA.

trade practice." *Jackson v. ASA Holdings*, 751 F. Supp. 2d 91, 99 (D.D.C. 2010) (citations omitted).

**F. Defamation**

A plaintiff bringing a defamation action "must show (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Prins v. Int'l Tel. and Tel. Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991). A statement is defamatory "if it tends to injure plaintiff in [her] trade, profession or community standing, or lower her] in the estimation of the community." *Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C. 1984) (citations omitted). Here, the complaint mentions "[l]ibel and slander," Compl. ¶ 63, and "[d]efamation of character," *id*. ¶ 65, in only a conclusory manner. Missing are any factual allegations that identify the speaker, describe the purportedly defamatory statement, or explain where and how the statement was published.

Insofar as plaintiff demands "[e]xpungement or permanent removal of all negative information [D]efendants[] reported to Equifax, TransUnion, and Experian," *id*. ¶ 70.c., she may intend to raise a claim under the Fair Credit Reporting Act ("FCRA"), *see* 15 U.S.C. § 1681 *et seq*. If, for example, a defendant reported false information to credit reporting agencies reflecting plaintiff's nonpayment of a mortgage loan or foreclosure of the property, such a statement could be defamatory, *see Edmond v. Am. Educ. Servs.*, 823 F. Supp. 2d 28, 35 (D.D.C. 2011) ("A statement that a person does not pay [her] debts timely . . . is capable of a defamatory meaning."), *aff'd*, 483 F. App'x 576 (D.C. Cir. 2012), and might run afoul of the FCRA, which prohibits an

entity from "furnish[ing] information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1). But a claim premised on that section of the FCRA could not survive, because the FCRA does not create a private right of action enabling an individual to enforce this provision. *See* 15 U.S.C. § 1681s-2(d); *Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28, 34 (D.D.C. 2012) (finding that authority to enforce Subsection (a) rests exclusively with the federal and state agencies and officials identified in Section 1681s). Courts have recognized that a plaintiff can bring a private action for violations of Section 1681s-2(b), but that would require a showing that the plaintiff notified the credit reporting agency of the disputed information and that the agency then notified the furnisher of the allegedly false information, so that the furnisher could conduct an investigation. *Id.* at 34-35. No such facts are alleged here.

Furthermore, the FCRA would preempt a common law defamation claim. *See* 5 U.S.C. § 1681t(b)(1)(F); *Rivera v. JPMorgan Chase Bank*, 140 F. Supp. 3d 88, 94 (D.D.C. 2015) (concluding that plaintiff s common law defamation claim is preempted because it covers the same subject matter as the FCRA). In relevant part, the FCRA provides:

> *[N]o consumer may bring any action or proceeding in the nature of defamation*, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer*.

15 U.S.C. § 1681h(e) (emphasis added). Missing from the complaint are any allegations that a defendant furnished false information to a credit reporting agency with malice or willful intent to injure plaintiff. These pleading defects warrant dismissal of the defamation claim. *See Pleznac*

*v. Equity Residential Mgmt., L.L.C.*, __ F. Supp. 3d __, __, 2018 WL 3768535, at *5 (D.D.C. Aug. 8, 2018); *Wilson v. Prudential Fin.*, No. 03-CV-2313, 2004 WL 2451412, at *6 (D.D.C. Oct. 18, 2004); *see also Edmond*, 823 F. Supp. 2d at 36 n.5 (noting that "[p]laintiff's failure to make out a defamation claim also dooms any recovery under the [FCRA]").

## G. Intentional Infliction of Emotional Distress

"To establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002) (citations omitted). "Liability will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal quotation marks and citations omitted). It is for the Court to decide, as a matter of law, "[w]hether the conduct complained of is sufficiently outrageous." *Smith v. United States*, 121 F. Supp. 3d 112, 124 (D.D.C. 2015), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016).

Plaintiff's complaint does not describe the conduct she deems so extreme or outrageous as to support an intentional infliction of emotional distress claim. Other courts in this district have ruled that conduct in effecting the foreclosure on a mortgage is not conduct so extreme or outrageous as to qualify. *See Hamilton v. JPMorgan Chase Bank*, 118 F. Supp. 3d 328, 334 (D.D.C. 2015) (dismissing claim that "the foreclosure on [plaintiff's] mortgage constituted intentional infliction of emotional distress"); *Haynes v. Navy Fed. Credit Union*, 825 F. Supp. 2d 285, 294 (D.D.C. 2011) (finding that numerous calls to plaintiff's home, false reports to credit agencies that he was in arrears on his loan, and statement that foreclosure proceedings in the future

may be initiated "fall short of pointing to conduct so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community"); *Busby*, 772 F. Supp. 2d at 285-86 (finding that servicer's

and trustee's "conduct, stemming from the parties' disagreements over their rights and obligations

in a commercial loan transaction, does not plausibly rises to the level of 'atrocious' conduct going

'beyond all bounds of decency' as required to support an IIED claim"). Certainly here, where no

facts have been provided, no claim has been stated.

## II. Plaintiff's Claims Are Barred by the *Rooker-Feldman* Doctrine

Although plaintiff claims that she "is not asking [this federal district court] to invalidate as

unlawful, a contested foreclosure decision made by [the] Superior [Court]," Opp'n to BANA Mot.

at 4, her arguments and demands for relief suggest the opposite. To the extent plaintiff has brought

this action to challenge the foreclosure, the complaint falls short under Rule 12(b)(6).[6]  More

importantly, the claim is barred by the *Rooker-Feldman* doctrine, which "prevents lower federal

courts from hearing cases that amount to the functional equivalent of an appeal from a state court."

---

[6] The Court could construe the complaint broadly as an attempt to raise a wrongful foreclosure claim. *See Johnson v. Fairfax Village Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 505 (D.C. 1994) (holding that "an action for wrongful or improper foreclosure may lie where the property owner sustains damages by reason of a foreclosure executed in a manner contrary to law"). But that claim would fail along with claims plaintiff specifically identified. "To state a claim for wrongful foreclosure, the plaintiff must allege sufficient facts to state a plausible claim that [she] sustain[ed] damages by reason of a foreclosure executed in a manner contrary to law." *Tefera v. OneWest Bank, FSB*, 19 F. Supp. 3d 215, 222 (D.D.C. 2014) (internal quotation marks and citations omitted), *appeal dismissed*, No. 14-7039 (D.C. Cir. Sept. 16, 2015). Although plaintiff characterizes defendants' actions as unlawful, *see* Compl. ¶¶ 33, 41, the complaint fails to allege that defendants violated some provision of District of Columbia law in the course of the foreclosure proceedings in the Superior Court. *See, e.g., Robinson v. Deutsche Bank Nat'l Trust Co*., 932 F. Supp. 2d 95, 103 (D.D.C. 2013) (discussing wrongful foreclosure claim arising from alleged violations of D.C. Code § 42-815). Plaintiff's conclusory assertion that defendants "attempt[ed] to unlawfully foreclose," Comp. at 1, does not suffice. *See Jackson*, 751 F. Supp. 2d at 101 ("A conclusory allegation that Defendants wrongfully foreclosed is totally inadequate to state a claim for wrongful foreclosure.").

*Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). The "doctrine has limits, however." *Hunter v. U.S. Bank Nat'l Ass'n*, 698 F. Supp. 2d 94, 96 (D.D.C. 2010), *aff'd*, 407 F. App'x 489 (D.C. Cir. 2011). It "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). If, however, "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (internal quotation marks, brackets, ellipses and citations omitted).

Plaintiff raised no independent claim, and instead raises claims falling squarely within the confines of the doctrine. Plaintiff was the sole defendant in the Superior Court foreclosure case, and she lost when the Superior Court ratified the foreclosure sale on May 30, 2017. She filed this civil action just days after District of Columbia Court of Appeals dismissed her appeal and motion to stay the May 30, 2017 Order. Plaintiff's claims in this court are expressly based on the unlawfulness of the foreclosure, and she seeks relief designed to invalidate the Superior Court's judgment.

Plaintiff cannot achieve in this federal district court "what in substance would be appellate review of the [District of Columbia] judgment . . . based on [her] claim that the [District of Columbia] judgment itself violates [her] federal rights." *Johnson v. DeGandy*, 512 U.S. 997, 1005-06 (1994) (citations omitted); *see Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 376 (D.D.C. 2015) (dismissing case brought by "plaintiff [who] effectively seeks to collaterally attack the state

court possession judgment ratifying the foreclosure and sale of the Michigan property (and permitting eviction proceedings)"); *Fontaine v. Bank of America, N.A.*, 43 F. Supp. 3d 1, 4 (D.D.C. 2014) ("Consequently, to the extent that the California courts have already ratified the foreclosure proceedings that Fontaine now seeks to challenge, this Court concludes that the *Rooker-Feldman* doctrine renders it without subject matter jurisdiction to review the instant complaint."); *Hunter*, 698 F. Supp. 2d at 99-100 (dismissing case brought by plaintiff who "lost the foreclosure action brought against him in state court [and] subsequently filed this action to contest the validity of that judgment and seeking damages for injuries he suffered as a result of the foreclosure"); *Tremel v. Bierman & Geesing, L.L.C.*, 251 F. Supp. 2d 40, 41 (D.D.C. 2003) (dismissing case because court lacked jurisdiction to review final decisions of Maryland state courts ratifying foreclosure sale of real property).

## CONCLUSION

Plaintiff's complaint fails to state any claims upon which the Court may grant relief. Therefore, the Court dismisses Harvey West Auctioneers, Inc. as a party defendant, grants BANA's and SIWPC's motions to dismiss, and dismisses the complaint and this civil action. An Order is issued separately.


DATE: September 13, 2018                    /s/
                                            AMY BERMAN JACKSON
                                            United States District Judge